and the Secretary of the Florida Department of Economic Affairs, Ashley Gorski, is here for the appellates, Nathan Forster is here for the appellees, and Ms. Gorski, you may begin when you're ready. Good morning, your honors, and may it please the court. Florida law SB 264 should be preliminarily enjoined for two key reasons. First, Florida's creation of its own foreign enemies list is directly in conflict with FIRMA and with Congress's ability to speak for the nation with one voice on matters of foreign policy. Second, Florida's law discriminates based on national origin in violation of the Fair Housing Act and the Equal Protection Clause. By restricting housing based on Chinese domicile, Florida is unlawfully restricting housing for Chinese people. Can I ask you about standing before we get into the merits? I know it's raised both below and here. So I think you would agree, just let me back up. So for standing, as I understand, you can't do it in gross and it needs to be by claim and also by relief. And so here, as I understand it, you're seeking an injunction really on three separate provisions of a larger bill. Provision one is what I'll call the purchase provision, the second one is on the affidavit provision, and the third is on the registration provision. Do I have that right? Yes, your honor. So you need to have standing as to each of those things, you would agree? I think the affidavit and registration provisions are part and parcel of the discriminatory scheme. I don't think that the court's analysis necessarily needs to parse standing for affidavit versus... I'm happy to walk through where the plaintiffs are because the factual situation has changed. Okay. Well, I may not care about that part of it, although some other folks may have questions about that. The only reason I ask is because these are separate provisions. I mean, and they are divisible provisions in the statute. They are independent requirements that are there that aren't dependent on each other. And so to enjoin, if we're seeking an injunction, it's really an injunction of a whole law because there's a lot there. It's those discrete provisions. So don't we have to assess it per injunction, essentially? Your honor, I... I don't see how else we don't under the concept of having to do things in gross. Certainly plaintiff by plaintiff, claim by claim, form of relief by form of relief. Right. But I don't think our claims are necessarily divided in this way, but I'm happy to talk through... Okay. So let's start with the purchase provision for me because I'll put my cards on the table. I think there is standing on the affidavit provision and the registration provision. So it's the purchase one that I'm most focused on or that I have the most questions about. So with regard to that, to be within the zone of the statute. So as I understand it, everyone seems to agree on kind of the test for what you need for future standing that comes from Susan B. Anthony. And the real part is the first part, which is that there must be an intent to engage in conduct arguably affected with a constitutional or statutory interest, but prescribed by the underlying statute. So everyone seems to agree on that. And it's the prescribed by the statute, the arguably prescribed by the statute that I think is the biggest issue here. Because the statute requires the purchase provision, three things, domicile, non-citizenship or non-LPR status, and the purchase of property before a certain date. Right? Is that fair? Yes. Okay. Well, I'm sorry. Yes. The purchase of property before... Right. I think it's July 1. I think there's a dispute about what constitutes... We'll talk about that. I think that's part of this. But let's talk about domicile for a second. So I want to put plaintiff Wang aside for domicile. But as to individual plaintiff Liu, Zhu, and Shen, all of them in one form or another seem to indicate a plan, a hope, an intent, and actually in some cases acts of indefinite or permanent residence here. Correct? Well, Your Honor, I think they indicate a subjective hope. However, a subjective hope doesn't translate into the ability to form the requisite legal intent for the purposes of... Those are pretty close. I mean, intent by its nature is... I mean, you're right that there's an objective element, but there seems to be objective indicia in each one of them. They've been here for years. They've purchased property in the state. They have significant jobs. One person is even registered with the state for a license to have a license to operate. Another is a professor at a university here. I mean, so there is objective indicia, but the test is understand under Florida law, and I'm looking at Perez, which is a case you all be here, and the other is an intent to remain here either permanently or indefinitely, right? No, Your Honor. Our precedent that we've cited is the Florida Supreme Court precedent, and the state has cited lower court precedent, but Minnick and even Ketelow, a case cited by the state, say that a domicile is a permanent home, and the Florida Supreme Court also said in Guerrero that there's a distinction between... So here's what... Granted permission to stay indefinitely... Here's what Judge Hubbard wrote about Guerrero, and the line of cases you cite stems from there. The instant case is distinguishable from Guerrero, where it recently held that Cuban refugee was not entitled to the exemption under the homestead from taxation. That case turned on a feature of the constitutional provision for the homestead exemption required the applicant to have a permanent home, and that's... Yada, yada. The bottom line is different here, and the reason is because the constitutional provision, which is all that's being interpreted in those cases, is different than what's required under the test in Florida for domicile, right? No, Your Honor, because Minnick provides a test in Florida law for domicile, and Minnick, this is a case I believe from the 1930s that we cite in our brief, and that defines domicile as a permanent home, not an indefinite home, and the state's effort to blur these two... But let me be clear, it's an intent to create a permanent home, right? That's what it says. Again, I think the relevant question here is the plaintiffs can form the legal intent to create a permanent home. How is the statement of, and I'll just go through quickly the affidavits, but the Shen affidavit states that I have not yet applied for permanent residency, but my employer has begun the process, so that is objective indicia, and I plan to. That's not, I hope, I plan to apply for permanent residency. But there's no indication that that permanent residency will be granted, Your Honor. I know, but Perez seems to indicate that doesn't matter. In other words, Perez even, as an example, states someone can even be subject to deportation as long as they have the intent to remain here and they live here. That's what's dispositive. How is that not an indication of both subjective and objective intent? Perez also concerned a refugee who, unlike plaintiffs, was legally authorized to remain indefinitely, and again, that's something that Guadarro made clear, that the authorization to remain indefinitely is not authorization to remain permanently, and the court in Perez relied on policy considerations that were specific to family. But they also relied on, and if you go through Perez, you're right, certainly about the fact of Perez, about the refugee status, but it gave a number of examples, including those who were not authorized to be here or only here temporary, exactly like the plaintiffs here, and that were subject to deportation, and that, they said, was sufficient as long as there was an intent to stay. And so looking at the Xu affidavit, I don't have plans to ever return to China. I hope that I will be able to remain here as a permanent resident. I have no intention of ever going back to China because of my persecution by the Chinese government, and that he had applied for political asylum there. And then with regard to the Liu affidavit, Liu also says, I have yet to apply, but I plan to apply, and my hope is to remain in the United States. How is that not both objective and subjective intent to stay at least indefinitely? I don't know that, well, I don't think it's objective intent to stay indefinitely. Again, I don't think creation of an indefinite home is the relevant test for domicile under Florida Supreme Court precedent, including Minnick, including precedent cited by the district court below, who agreed with us on this. And again, going back to your opening, Judge Luck, the is arguably prescribed by the statute. Arguably, they are domiciled in China. And given that, and we haven't talked about plaintiff multi-choice, but plaintiff multi-choice also has customers who are indisputably domiciled in China and are barred from purchasing property. Let's talk about those. I'm not sure, there's some third party issues, but let's go with it. So in the first affidavit, there's two affidavits. The first song affidavit doesn't indicate at all the domicile of the clients, right? I hesitate to say it doesn't indicate at all. The second one makes very clear. Okay. What the second one makes clear is not necessarily referring to the earlier one, but what it says is, so we have customers and those customers are people that are substantial risk of being deemed domiciled, but we'll go with that, as already being harmed. And only refers to one customer. No, Your Honor. At 310 in the appendix, there's a paragraph that specifies that it's customer base includes people who are domiciled in China and also people who reside in the United States on a variety of non-immigrant visas and are at substantial risk of being domiciled in China. And then the identification of the customer, it was not necessary for plaintiffs to identify any customer below. None of the facts were in dispute in this fact that this law was being interpreted by lenders in such a way where lenders made a decision not to lend to any Chinese citizen seeking to purchase a home in Florida. And that was to illustrate the impact of the law, not because plaintiffs, not because it was necessary. Even if they had customers that were domiciled, there's no indication that the exception doesn't apply because the exception does allow the purchase of some property. I think a residential property under two acres, that's not within five miles of a military installation, correct? No, Your Honor. So Plaintiffs' U already owns property. No, but for the multi-state real estate on the Song affidavit, there's no indication that their customers aren't people who are buying within the exception, right? Your Honor, MultiChoice is a business with a wide variety of customers, including some who are indisputably domiciled in China. And I think even the customer that's referred to in the email correspondence only had a tourist visa and so would not have been eligible to proceed. But in any event, I mean, that's something plaintiffs can certainly supplement the record to make clear that MultiChoice has customers who are ineligible for the exception. Okay. I have one last standing question and I will ask our presiding judge to give you more time because I've occupied a lot of your time. So I just want me to run these things down. So in Wang, so the Wang affidavit, Wang in my mind does meet the domicile requirement. I don't think that is fairly argued on the other side here. But that falls into the property part because the Wang affidavit is undisputably says that she owns a residence currently in Miami and there's no indication unlike the other ones of a significant, of a substantial probability of a future purchase. And so the problem with the Wang affidavit for the purchase provision only is that her purchase was predated the date here. And so I don't see how she falls under the purchase provision or would be injured by the purchase provision. She would not have standing to challenge the prohibition on purchases. Okay. Those are my standing questions. Thank you so much. Do you mind if we add some more time? I'm going to give you another, at least another 10 minutes since all we've talked about is standing. And I guess speaking for myself, I'm primarily concerned with the preemption issue. And the district court in this case distinguished this case from Crosby versus National Foreign Trade Council and Olderbrack versus construction. Those cases, according to the district court, involved the power of the president to administer foreign affairs, whereas this case involves national security. Where did the district court go wrong there? Your Honor, the district court went wrong on the law and the facts. In preemption law, there's no basis for the district court's analysis to be focused on the thrust of the not implicating foreign policy. The question is whether the state statute serves as an obstacle to the accomplishment of Congress's objectives. And then on the facts, the scheme here undeniably has significant foreign policy implications. As just one example, taking a step back, under FIRMA, Congress vested a committee with the ability to review transactions. That committee can approve them. It can impose risk mitigation measures. One of the members of that committee has to be a government official with foreign affairs responsibilities. But Congress vested only the president with the authority to prohibit a transaction because it is a major decision with significant foreign policy implications. And the president under FIRMA is also required to consider the foreign affairs implications of each individual transaction that prohibit. SB 264 flies in the face of this court's admonition in Odebrecht that a state cannot select by name a foreign country on which it declares some kind of economic war. That is exactly what SB 264 does. And you can have a direct conflict. So you can imagine a situation where the president is evaluating a transaction near a military base in Florida. And the president policy consequences, the greater risks associated with prohibiting that transaction. And the president in his discretion decides to allow that transaction to proceed. But under Florida law, that transaction would simply be barred. Can I ask you a question? This is related to that. So assume for the moment that there's no standing for the purchase provision. So all we have standing for is the registration and affidavit provision. Is your preemption argument weakened by that? How would your preemption argument look when you take out the purchase provision? Well, the registration provision in particular still involves targeting Florida's distinct set of foreign enemies. But it wouldn't have that conflict that you said. In other words, all it would say is the president would allow it. And that would just mean you have to register, right? I think that a state singling out particular countries, creating a foreign enemies list, presents this conflict with FIRMA. And in addition, FIRMA deliberately exempts single housing units from national security review because Congress struck a balance. It recognized that over restriction of property transactions can harm national security. And it specifically underscored in a sense of Congress that foreign investment benefits the United States, thereby enhancing national security. Registration provision and the affidavit requirement are drags on that in a very clear and obvious way. In our incompetence case, though, we seem to suggest that as long as our sort of conflict, that would create preemption. In other words, because we essentially took, Florida took it from what the federal was doing, we piggybacked, then we're okay. And it seems that similar to what happened here, we sort of piggybacked on the federal enemies list, to use your terminology. No, your honor, FIRMA has no federal enemies list. There is a federal list of foreign countries of concern in a completely separate regulatory regime that has language specifying that this list should not be used for any other purpose. And in Plyler, the Supreme Court made clear that if the state is going to rely on a federal category, that category needs to be reasonably related. And even here, what Florida has done is very different because it has especially named the countries in a way that differs from what happened in Faculty Senate. But Faculty Senate is also distinguishable because there was a likely minor economic impact. The law there did not broadly obstruct trade. It did not even attempt to obstruct. Would that be true if all we had to review was the registration and the affidavit provision? Would it be true that... You just read that portion from Faculty Senate. Would those provisions not be minor without the big dog here, without the purchase provision? Well, the problem is that the affidavit provision, you have to attest that you are not domiciled. And they're all inextricably bound up with the purchase provision. I mean, people won't be buying homes because there would be effectively... I mean, the prohibition still exists. And so, yeah, I don't see how slicing and dicing would take this case out of the ambit of Crosby and Odebrecht and put it under the ambit of Faculty Senate. On the equal protection claim, your argument, as I understand it, is that Terrace v. Thompson is no longer a good law after Graham v. Richardson? That's correct, Your Honor. Terrace has been superseded. But even more importantly, Terrace is not directly controlling because it is not directly on point. And that is for three reasons. First, the court characterized the statute as an even-handed one that applies alike and equally to all aliens. And that was central to its analysis. Second, part of the reason the court found the statute permissible was that the state was relying on a federal category, aliens ineligible to citizenship. That category no longer exists in federal law. And here, of course, there is no reliance on that federal category, as we were just discussing. Doesn't that provision show that it wasn't really like and alike? In other words, because of that definition, that definition only excluded certain people from coming to this country in a horrible way that we have since rectified. But doesn't that indicate something similar to what happened to what this law is about? In other words, doesn't that create the parallelism between Terrace and this case? It doesn't make Terrace directly controlling. I think when assessing whether Terrace is on point, the court should take at least value the Supreme Court's characterization of the facts in that case. It is absolutely the case that the law in Terrace had a discriminatory impact, was reprehensible, and there are certainly parallels. And that's part of what makes Florida law SB 264 so disturbing is that it is echoing this reprehensible era from United States history. Because it's alien-specific? Yes, exactly. And it is singling out people from particular foreign countries in a way that is to the equal protection guarantees that that now exist. But yes, this law is different, even if Terrace versus Thompson is still good law. Because it singles out people from certain countries, countries in particular. And this is the first alien-specific law that's been passed in the United States. Is that is that right? Well, Your Honor, admittedly, it's challenging to do comprehensive historical research on the state of these laws. When considering the preemption analysis in Congress's intent in 2018, yes, in 2018, there was no law that looked remotely like SB 264. There was no law that singled out particular foreign countries for restrictions. In the history of the Republic, there have been handful of such laws. We've only been able to find four. Some of them are more focused on race than on nationality. But the point is, these are all extremely old laws consigned to the dustbin of history, long since repudiated. And yes, precisely. Terrace is not controlling because this case involves a state statute that in an extraordinary way singles out particular foreign countries. Terrace did not involve that. And the Supreme Court there characterized the law as neutral. And one final note of distinction on the facts of Terrace is that Terrace and its companion cases on the facts all involved purchases of agricultural land. And that was part of the Terrace court's analysis. That's not at issue in plaintiff's motion for appeal. What about the Fifth and Sixth Circuit's distinctions between LPR's legal permanent residence as being what has been those who are not LPR's? They've made a bright line distinction. And we've seemed to accept it. There's some language in Estrada which seems to accept that. What do we do with that? Your Honor, the language in Estrada does not accept it insofar as it indicates some agreement. It has to do with the context of DACA recipients, which the court characterized as inadmissible and thus removable. The cases you're referring to were wrongly decided. They fly in the face of Supreme Court precedent that makes clear. Bernal referred to aliens as a class. I just refer to one part of Estrada real fast. It's at 1310, the pin site. It says appellants may pursue post-secondary education outside these three schools and the policy in no way undermines appellant's deferred action status. Thus, quote, from the clerk, we decline to extend the Supreme Court's decisions concerning resident aliens to different alien categories. What do we do with that? I think this language from Leclerc confuses resident alien and LPR, but more to the point- It may be wrong. Just what do we do with it? Estrada was limited to its facts, which involve DACA recipients who are in a completely different category from the plaintiffs here because DACA recipients, the court characterized as inadmissible and thus removable. That's not the category the plaintiffs are in here. More broadly, the Supreme Court precedent that is binding, not this dicta from Estrada, but the Supreme Court precedent that is binding says that aliens as a class are discrete and insular minority. The Supreme Court has carved out only two narrow exceptions to that rule, the political function exception and the exception for undocumented- Has it ever applied those classifications in alienage to a class outside of LPRs or an LPR equivalent? Yes, Your Honor, in that there are cases that bring within- There are cases that affect more than LPRs, but that also affect LPRs. Then the other circuits have said, well, because those cases happen to affect LPRs, we're going to create this new rule out of whole cloth that is, again, completely at odds with the language in Bernal, Graham, and other Supreme Court cases. I see that time has expired. Thank you. Thank you, counsel. You'll keep all your rebuttal time. Thank you very much. Mr. Forrester. Thank you, Your Honor. May it please the court. Initially, Judge Luck, I'd be happy to answer further questions about standing, but if you do not want to pursue that any further, I'd prefer to move right into CFIUS. I mean, it's your time. Do you- Give me your best- Let me ask you this. Do you agree with me that in the discussion, with the understanding that we do not look at standing in gross, but have to look at it individually per claim and per relief, that the requirement of plaintiff is to meet standing for each of the injunctions, which is an injunction on the purchase provision, an injunction on the alien provision- I'm sorry, the affidavit provision, an injunction on the registration provision. You agree with that? Yes. Okay. What is your best argument for no standing on the registration and the affidavit provision? On the registration requirement, the standing still depends on the plaintiff's being domiciliaries. So the same concern that you raised about the purchase- The problem is- So I raised concerns about three of the individual plaintiffs and the company, but Plaintiff Wang doesn't give any indication. In paragraph eight of her affidavit to her, yeah, of her affidavit states, I have not applied for permanent residency status in the United States. I mean, she doesn't contradict what we know she signed when she signed her F-1 visa, which is I will not remain here permanently. I will not apply for permanent status. Whereas the others seem to indicate that they have a different current intention, right? She has also conspicuously not stated an intent to return to China. It is her domiciliary of China. I agree with that, but the way I understand domicilial work is there's no dispute, as I understand it, that she was domiciled in China. She came to the United States as a student. And the question is, has she met the two parts of the test under Florida law? One, are you here? Obviously she's here. And the other is, have you demonstrated an intent to either remain here permanently? And I know there's a dispute on indefinitely, but let's assume indefinitely right now. I just don't see anywhere where there's an intention expressed there that's been presented anywhere in the record. Can you, can you point me to it? Well, quick aside, you're absolutely right on indefinitely. But I do think the the indicia she gives by having already bought a home here, by having a child here, having been here as long as she has, indicating, again, no actual intent to return to China, I believe fairly means that she is a domiciliary of Florida. And in fact, in the plaintiff's initial brief, they refer to all the individual plaintiffs as ordinary Florida residents. That is the word for domiciliary in Florida, a resident of Florida. What about the affidavit requirement? I mean, they all meet the affidavit requirement to some domiciliary. But the fact that if you accept my argument that the individual plaintiffs don't have standing because they're not domiciliaries, they are effectively then, for purposes of that affidavit requirement, bringing a third-party claim. No, because some of them own property who are going to have to file. Some of them state, I'm going to buy property. But the basis of the claim is the supposed stigmatization of having to file the affidavit. Why? That gives them Article III standing. It doesn't give them prudential standing. Having to go and having to take the time and go and file an affidavit, if the statute applies to them, it applies to them. I mean, this isn't a stigma claim. They do say stigma, but it's not a stigma claim. They actually are required to do something under the statute. That's not third-party. That's them. But that suffices to establish Article III standing. Again, I'm saying they wouldn't have prudential standing. I think I understand what you're saying. Because of stigmatization. I'm happy to move on from that. I understand. Thank you, counsel. So if I understand your argument, counsel, that every state can have its own restrictions on foreign property investment? Yes. Notwithstanding the ability of the president to speak with one voice on foreign affairs? Is that the state's argument? And to be clear, plaintiffs are not raising a dormant foreign affairs preemption claim, which is sort of what your question is suggesting. They are claiming specifically that the CFIUS regime preempts the Florida statute. We don't think there's any indication in the CFIUS regime that it was designed to have preemptive effect. And that's very limited resources, relatively speaking. It's not a standalone agency. It's an interagency committee composed of cabinet officials and high-ranking executive branch officials who obviously have other considerable administrative responsibilities. Their annual appropriations from 2018 to 2023, I believe, were around $20 million. They do not have this large army of I think cannot plausibly be said to indicate a deliberate calibration of foreign affairs and national security concerns to draw the line there, but deliberately no further, because single-family homes and urbanized areas, which are exempt from CFIUS, are obviously areas where national security threats could arise. They reflect resource constraints. The committee is empowered to review and the president is empowered to block domestic transactions by foreign nationals. Yes, that's correct, Your Honor. And I will say this. That's the problem that I'm having is that the district court seems to make a distinction between national security and foreign affairs. And it seems to me that national security is even more a prerogative of the president under the Foreign Investment Risk Review Modernization Act. Yeah, I do think it's important not to get too hung up on foreign affairs versus national security. They are obviously overlapping terms. And the relevant point is that, again, CFIUS itself, I don't think plausibly can be said to represent a careful calibration of national security against economic and political concerns because, again, the areas that CFIUS can't reach by virtue of its jurisdiction and by virtue of its limited resources are areas that are quite plausibly going to raise national security concerns. So it really reflects a limited effort on a particular basis when, on typically a voluntarily basis, somebody brings a transaction to the attention of CFIUS. They are able to actually look at it and then in extraordinary cases are able to actually block the transaction. But it is not a sweeping attempt to deal with this problem on a comprehensive basis. Let me see if, just moving to the fair housing. Just on this last part, if, for example, we determined that we did not have standing for the purchase provision but do have standing for the registration and affidavit provisions, how would that affect the Sisyphus analysis that you've been talking about with Judge Wilson? I think it does diminish the affidavit. It's hard for me to imagine how CFIUS could possibly preempt an affidavit requirement and a requirement to register the property. Again, I just don't see how that could possibly arguably conflict with CFIUS. So I do agree on that point with Judge Locke. Thank you. Just moving to the merits, I'm trying to figure out how this law would work out conceptually. I'm a realtor and I have a client who has Asian features. What's the realtor required to do under the statute? Make a determination as to whether or not this potential purchaser of property in Florida is domiciled in China? How does that work? The affidavit requirement is designed to address that issue? Yeah. How does that work out conceptually? The realtor is required to have the potential purchaser of the property and the seller of the property sign an affidavit that they are not domiciled in China? Yeah. Yes, Your Honor. That's my understanding. I'm not as familiar with how it's been worked out in the regulatory scheme, but that's my understanding. The affidavit requirement applies to all buyers. In other words, you don't have to ask if someone looks Asian or looks however for it. Everybody has to fill out an affidavit stating they are not domiciled in one of these countries, right? Exactly. The affidavit requirement is not itself applied on any discriminatory basis. And the realtor, if it's a false affidavit, is the realtor subject to criminal liability? There's no mens rea requirement in the statute, is there? We think this actually is an issue that remains to be determined. We think the statute can fairly be understood under Florida law to include a mens rea requirement by implication, but that would actually remain for the courts to determine. Did Florida also pass a similar law targeting Haitians, in particular, who want to purchase property in the state of Florida near a federal building, if there have been prior protests by Haitians around federal buildings, targeting Haitians in particular? It was geared to domicile, not race. If they're domiciled in Haiti and they want to purchase property in Florida under the same circumstances. Yes, your honor. If this bill is constitutional, Florida could also pass a law to that effect? Yes, your honor. Okay. I would also like to point out on CFIUS, and after this, unless you have further questions about other aspects of the case, I'm happy to cede the rest of my time, but on CFIUS, I do think it is notable that the United States has not appeared to file an amicus brief in this case, and below they filed a statement of interest on the FHA issue. They did not argue that CFIUS preempted the Florida regime, and the Florida regime, in many respects, lines up exactly with things that the federal government has said are of concern. There's a whole FBI website about transnational threats that speaks to the threat specifically posed by China, by the Chinese government, and it's very clear, just like Florida, it's very clear it is not about race, the concern is about the Chinese government, and that is what this law is designed to do. The concern is the manipulation of the Chinese government. The concern is that Chinese domiciliaries are uniquely prone to the influence by the Chinese government, perhaps not even willingly. If we apply strict scrutiny to the law, Florida loses, right? Because it's not the least restrictive means to protect what the state argues is a compelling state interest. You don't even try to make that argument in your brief. Yeah, we have not made that argument, Your Honor. But of course, we don't believe that strict scrutiny does apply. Strict scrutiny does apply, Florida loses, right? Yes, Your Honor. Unless you have any further questions, I'm happy to... Well, I want to ask you one more question. My research indicates there are 21 military bases in Florida and many other sites that qualify as military installations or critical infrastructure facilities. We know how many square miles are not within a five-mile radius of a military installation or critical infrastructure facility in Florida. Doesn't that effectively ban property ownership by foreign principles? I actually don't know. Florida's got a lot of military bases. Yeah, I don't know for certain, Your Honor. I don't know what the actual acreage is. I believe the Department of Commerce is striving to put a map up on the website about that issue, but I don't think they have. I know they've done it for the 10-mile restriction on foreign countries of concern. I don't believe they've done it for the five-mile. With all the reasons we've laid out in your brief, we do believe you should affirm the district court's decision here. Thank you, counsel. Ms. Gorski, you've reserved some time for rebuttal. Thank you, Your Honor. First on standing, again, the question here is whether the individual plaintiffs are arguably domiciled in China. They are, and as to MultiChoice, we were discussing the exception for people who have a non-tourist visa to purchase property in Florida. The undisputed record shows that MultiChoice has customers who are indisputably domiciled in China. If a person is indisputably domiciled in China, it is exceedingly unlikely that that person possesses a non-tourist visa that would render them eligible for the exception under Florida law. As to the, well, still on standing, the civil enforcement issue. So the facts have changed since we last filed our brief. Of course, plaintiff Xu proceeded with his transaction before this court entered an injunction pending appeal. That means he's still at substantial risk of prosecution in the absence of an injunction under Georgia Latino Alliance. That's irreparable harm. But he is also still at substantial risk of civil enforcement. And that's because the Commerce Department regulation that the state pointed to in its 28J submission was promulgated pursuant to Section 203. But Plaintiff Xu, Plaintiff Shen are subject to both Section 203 and Section 204. There is not yet a Commerce Department regulation as to Section 204. And ownership interest would seem to cover, I mean, just as a matter of logic, I don't need to be told by the Commerce Department what it means. Would cover all ownership interests, right? I mean, it's not limited to certain kinds and not other kinds, right? The way that the regulatory scheme has proceeded as of this moment, the plaintiffs are not protected from civil enforcement. And of course, the state made an argument that the grandfather clause in the statute would also encompass their purchases. But put aside the regulatory regime, I agree with you that it's entitled to no deference and ownership interest would cover any ownership interest, would it not? I mean, it's not limited to certain kinds and not other kinds. The grandfather clause requires the plaintiffs in the statute to continue to own the property and they did not legally own anything. Very briefly on the affidavit requirement, this is inherently discriminatory because people have to certify, it applies to everyone, but there is a class of people who are going to be subject to tremendous uncertainty as to their domicile and they have to certify that they are not foreign principals or otherwise subject to the prohibitions in Section 204. And for that class of people, there's a significant equal protection problem, Fair Housing Act problem, they will be deterred from purchasing property, the law indisputably has a disparate impact on these people, and there are due process concerns. In conclusion, this law clearly conflicts with Congress's determination in FIRMA. It upends the balance that Congress struck and it unlawfully discriminates. The district court's decision should be reversed. Thank you very much. Thank you, counsel. We're going to take a 15-minute recess. Court will be in recess for 15 minutes. Thank you.